SANDY PINES WILDERNESS TRAILS, INC v SALEM TOWNSHIP

Docket Nos. 201785, 201786, 201889, 201890. Submitted March 3, 1998, at Lansing. Decided October 2, 1998, at 9:10 A.M.

Sandy Pines Wilderness Trails, Inc., a licensed seasonal recreational campground, petitioned the Michigan Tax Tribunal, seeking to have its real property tax assessments by Salem Township and Monterey Township reduced by eliminating the inclusion within the assessments of so-called "park models." A park model is a temporary dwelling or vehicle of less than four hundred square feet that is designed as temporary living quarters for recreational, camp, seasonal, or travel use, that is built on a single chassis, is mounted on wheels, and is drawn by another vehicle, and that, while able to be titled and registered as a trailer coach under the Michigan Vehicle Code, is unable to be licensed by the state of Michigan for over-the-road travel without a special permit. None of the park models at issue were owned by the petitioner. Pursuant to a directive of the Michigan State Tax Commission, the townships treated the park models as not coming within the mobile home exemption of subsection 2a(1) of the General Property Tax Act (GPTA), MCL 211.2a(1); MSA 7.2(1)(1), and thus making them subject to property tax assessment and taxation pursuant to subsection 2(1) of the GPTA, MCL 211.2(1); MSA 7.2(1). The petitioner argued that the park models were trailer coaches within the meaning of § 41 of 1959 PA 243, MCL 125.1041; MSA 5.278(71), that were subject to the specific monthly tax of that section and, accordingly, fell within the mobile home exemption of § 2a of the GPTA and were exempt from assessment and taxation pursuant to § 2 of the GPTA. The tax tribunal agreed with the petitioner, finding that the park models were subject to the specific tax of § 41 of 1959 PA 243 and thus were not taxable as real property under subsection 2(1) of the GPTA because they fell within the mobile home exemption of subsection 2a(1) of the GPTA. Each township appealed, and the tax commission appealed. The appeals were consolidated.

The Court of Appeals *held*:

1. Subsection 2a(1) of the GPTA provides that "a mobile home which is not covered by section 41 of Act No. 243 of the Public

Acts of 1959 . . . shall be considered real property and shall be assessed as part of the real property upon which the mobile home is located." Section 41 of 1959 PA 243 provides that a licensee shall collect and remit a specific tax of $3 a month for "each occupied trailer coach, including trailer coaches licensed under the provisions of [the Michigan Vehicle Code] . . . occupying space within the trailer coach park" and further provides that the specific tax "shall be in lieu of any property tax levied upon the trailer coach pursuant to the provisions of [the GPTA] upon or on account of the trailer while located in the trailer coach park."

2. The respondents contended that the mobile home exemption of subsection 2a(1) of the GPTA should apply only to those mobile homes covered by The Mobile Home Commission Act, 1987 PA 96, MCL 125.2301 et seq.; MSA 19.855(101) et seq., and that the park models located on the petitioner's property would not qualify for the mobile home exemption because the petitioner's property is not a mobile home park within the meaning of that act. The respondents argued that placing such a limitation on the meaning of mobile home as used in subsection 2a(1) of the GPTA is appropriate because the Mobile Home Commission Act, 1976 PA 419, repealed and replaced all of the provisions of 1959 PA 243 except § 41 and three other sections dealing with the collection of the specific tax and the provisions of 1976 PA 419 were continued without interruption in 1987 PA 96.

3. The respondents' suggestion that the Legislature intended that the present provisions of subsection 2a(1) of the GPTA are to be governed by the provisions of The Mobile Home Commission Act, 1987 PA 96, or its predecessor, the Mobile Home Commission Act, 1976 PA 419, is not supported by the history of subsection 2a(1). Subsection 2a(1) was amended by 1978 PA 379 to provide that a mobile home not covered by 1976 PA 419 should be assessed as part of the real property on which the mobile home was located; however, that language was later amended by 1982 PA 539 to change the statutory reference from 1976 PA 419 to its present reference to § 41 of 1959 PA 243. In light of the Legislature's clear rejection of the idea that subsection 2a(1) of the GPTA should be controlled by the provisions of either 1976 PA 419 or its successor, 1987 PA 96, the argument that the specific monthly tax and the resulting exemption from real property assessment and taxation should apply only to mobile homes located in mobile home parks licensed under 1987 PA 96 must be rejected.

4. Subsection 2a(1) of the GPTA clearly exempts from taxation as real property a "mobile home" that is covered by § 41 of 1959 PA

243. The specific tax of § 41 of 1959 PA 243 is levied on the owner or occupant of an "occupied trailer coach, including trailer coaches licensed under the provisions of [the Michigan Vehicle Code], . . . occupying space within the trailer coach park." It is clear that the reference to trailer coaches licensed under the Vehicle Code was included as a term of enlargement rather than as a term of limitation. Accordingly, because the provisions of the Vehicle Code are not controlling and the terms "occupied trailer coach" and "trailer coach park" are no longer defined by statute for the purpose of § 41 of 1959 PA 243, those terms must be given the meaning that they are understood to have in common language.

5. Applying the meaning as understood in common language, the Legislature must have intended the term "occupied trailer coach" to mean an occupied moveable residence attached to and drawn by some other power source and the term "trailer coach park" to mean an area of land where trailer coaches may be assembled or stationed.

6. The Tax Tribunal did not err in holding that § 41 of 1959 PA 243 applies to parks that are licensed.

7. Because it was stipulated that the park models were movable, were drawn by other vehicles, and were used as dwellings temporarily, they were occupied trailer coaches. Further, because the stipulated facts indicate that the petitioner was a licensed campground that allows its members to keep recreational vehicles, including park models, on campsites in the park, it was a licensed trailer coach park. Accordingly, the park models were subject to the specific tax of § 41 of 1959 PA 243 and, by reason of subsection 2a(1) of the GPTA, were not subject to the general property tax under subsection 2(1) of the GPTA.

8. To the extent that the passing comment in the decision of the Tax Tribunal concerning current assessment practices constituted a finding of fact that was not supported by competent, material, and substantial evidence on the record, such a finding would not mandate reversal, because it played no role in the outcome of the case, which turned on the interpretation of statutes and the application of those statutes to the undisputed stipulated facts.

Affirmed.

1. TAXATION — GENERAL PROPERTY TAX ACT — MOBILE HOMES — THE MOBILE HOME COMMISSION ACT — LEGISLATIVE INTENT.

The Legislature did not intend the provisions of the mobile home exemption of subsection 2a(1) of the General Property Tax Act to be governed by the provisions of The Mobile Home Commission

Act (MCL 211.2a[1]; MSA 7.2[1][1]; 1987 PA 96, MCL 125.2301 *et seq.*; MSA 19.855[101] *et seq.*).

2. TAXATION — TRAILER COACHES.

A dwelling or vehicle that is of less than four hundred square feet, that is designed as temporary living quarters for recreational, camp, seasonal, or travel use, that is built on a single chassis, is mounted on wheels, and is drawn by another vehicle, and that can be titled and registered as a trailer coach under the Michigan Vehicle Code but can be licensed for over-the-road travel only with a special permit is an occupied trailer coach for the purpose of the provisions of § 41 of 1959 PA 243 (MCL 125.1041; MSA 5.278[71]).

3. TAXATION — LICENSED TRAILER COACH PARKS — LICENSED RECREATIONAL CAMPGROUNDS.

A licensed recreational campground is a licensed trailer coach park for the purpose of the provisions of § 41 of 1959 PA 243 (MCL 125.1041; MSA 5.278[71]).

4. TAXATION — GENERAL PROPERTY TAX ACT — TRAILER COACHES — LICENSED TRAILER COACH PARKS — LICENSED RECREATIONAL CAMPGROUNDS.

A dwelling or vehicle that is a trailer coach within the meaning of § 41 of 1959 PA 243, that is located within a licensed recreational campground, and that is not owned by the campgrounds is subject to the specific tax of § 41 of 1959 PA 243 and falls within the mobile home exemption of subsection 2a(1) of the General Property Tax Act (MCL 125.1041, 211.2a[1]; MSA 5.278[71], 7.2[1][1]).

*Foster, Swift, Collins & Smith, P.C.* (by *Steven H. Lasher* and *Mark J. Burzych*), for the petitioner.

*Bauckham, Sparks, Rolfe & Thomsen, P.C.* (by *John K. Lohrstorfer*), for Salem Township and Monterey Township.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Ross H. Bishop*, Assistant Attorney General, for Michigan State Tax Commission.

Before: MCDONALD, P.J., and O'CONNELL and SMOLENSKI, JJ.

Smolenski, J. In these consolidated appeals, respondents, Salem Township, Monterey Township, and Michigan State Tax Commission, appeal as of right from a judgment of the Michigan Tax Tribunal (MTT) finding that "park models" located on land owned by petitioner, Sandy Pines Wilderness Trails, Inc., should not be assessed as real property under the general property tax law. We affirm.

This case was decided on stipulated facts. They indicate that Sandy Pines is a licensed, seasonal, recreational campground. Sandy Pines owns certain real property located in respondent townships.[1] Sandy Pines is available for use only by its members, their guests, associate members, and members of Coast to Coast. Sandy Pines' members do not acquire any interest in Sandy Pines' real property other than a license to use the property. Membership in Sandy Pines allows each member to use one campsite on which the member may keep a "recreational unit," which is defined as

> a vehicle type unit primarily designed for temporary living quarters for recreational, camping, travel or seasonal use, that has its own motive power, or is mounted on, or towed by, another vehicle. The basic vehicles are: camping trailers, fifth-wheel trailers, motor homes, park models, travel trailers and truck campers.

A "park model" is defined as

> a temporary dwelling or vehicle having less than 400 square feet of living area; designed as temporary living quarters for recreational, camping, seasonal or travel use; built on a sin-

---

[1] The townships are located in Allegan County.

gle chassis, mounted on wheels and drawn by another vehicle; unable to be licensed by the State of Michigan for over-the-road travel without a special permit, and able to be titled and registered as a trailer coach under the Motor Vehicle Code.

Sandy Pines does not own any of the park models located on its real property.

Section 1 of the General Property Tax Act (GPTA), MCL 211.1 *et seq.*; MSA 7.1 *et seq.*, provides "[t]hat all property, real and personal, within the jurisdiction of this state, not expressly exempted, shall be subject to taxation." MCL 211.1; MSA 7.1. Subsection 1 of § 2 of the GPTA provides in relevant part that "[f]or the purpose of taxation, real property includes all lands within the state, all buildings and fixtures on the land and appurtenances thereto, except as expressly exempted by law . . . ." MCL 211.2(1); MSA 7.2(1). At issue in this case is subsection 1 of § 2a of the GPTA, which provides in relevant part as follows:

> For purposes of section 2, a mobile home *which is not covered by section 41 of Act No. 243 of the Public Acts of 1959, being section 125.1041 of the Michigan Compiled Laws* [hereinafter § 41 of 1959 PA 243], . . . shall be considered real property and shall be assessed as part of the real property upon which the mobile home is located. [MCL 211.2a (1); MSA 7.2(1)(1) (emphasis supplied).][2]

---

[2] The remainder of § 2a of the GPTA provides as follows:

(2) As used in this section, "mobile home" does not include a travel trailer or camping trailer which is either parked in a campground licensed by this state for not more than 180 days in any calendar year, or parked upon private property, including a designated storage area of a licensed campground, for the sole purpose of storage.

Section 41 of 1959 PA 243 provides for a $3 specific monthly tax on certain trailer coaches in lieu of any property tax imposed under the GPTA:

> *Each licensee shall collect and remit a specific tax of $3.00 per month*, or major fraction thereof, *per occupied trailer coach*, which shall be a tax upon the owners or occupants of each occupied trailer coach, *including trailer coaches licensed under the provisions of* [*the Michigan Vehicle Code* (MVC), MCL 257.1 *et seq.*; MSA 9.1801 *et seq*]. , notwithstanding any provision of [the MVC], as amended, to the contrary, *occupying space within the trailer coach park. The specific tax shall be in lieu of any property tax* levied upon the trailer coach pursuant to the provisions of [the GPTA] upon or on account of the trailer while located in the trailer coach park. The licensee of a trailer coach park shall not collect a monthly tax for any space occupied by a

---

(3) As used in this section, "mobile home" does not include a truck camper which is parked in a campground licensed by this state which is a portable structure, designed and constructed to be loaded onto, or affixed to, the bed or chassis of a truck, and which is used to provide temporary living quarters for recreational camping or travel.

(4) For purposes of this section, the following definitions shall apply:

(a) A travel trailer is a vehicular portable structure mounted on wheels and of a size and weight as not to require special highway movement permits when drawn by a stock passenger automobile or when drawn with a fifth wheel hitch mounted on a motor vehicle and is primarily designed, constructed, and used to provide temporary living quarters for recreational camping or travel.

(b) A camping trailer is a vehicular portable temporary living quarters used for recreational camping or travel and of a size and weight as not to require special highway movement permits when drawn by a motor vehicle.

In this case, a park model cannot be a "travel trailer," "camping trailer," or "truck camper" because, by stipulated definition, a park model is drawn by another vehicle and requires a special permit for highway travel. Thus, there is no dispute that subsections 2 through 4 of § 2a of the GPTA do not apply in this case.

trailer coach accompanied by an automobile when the
trailer coach and automobile bear license plates issued by
any state other than this state for an accumulated period
not to exceed 90 days in any 12-month period, if all the
occupants of the trailer coach with accompanying automo-
biles are tourists or vacationists. When one or more per-
sons occupying a trailer coach bearing a foreign license are
employed or are conducting any manner of business or
furnishing any service for gain within this state, there shall
be no exemption from the specific tax. [MCL 125.1041;
MSA 5.278(71) (emphasis supplied).]

Thus, under § 2a of the GPTA, a mobile home that is
an occupied trailer coach, including trailer coaches
licensed under the MVC, occupying space in a trailer
coach park is subject to a $3 specific monthly tax in
lieu of any property tax. Conversely, a mobile home
that is not such a trailer coach shall be considered
real property subject to the general property tax.

In this case, respondent townships assessed Sandy
Pines' real property for the tax years 1995 and 1996.
Pursuant to a directive by respondent commission,
respondent townships included in these real property
assessments the park models located on Sandy Pines'
land. Respondents' rationale for assessing the park
models as real property under the GPTA was that for
purposes of § 2a of the GPTA the park models were
not mobile homes covered by § 41 of 1959 PA 243 and
thus not subject to the $3 specific monthly tax
imposed on occupied trailer coaches occupying space
in trailer coach parks.

Sandy Pines appealed the inclusion of the park
models in the real property assessments to the MTT.
Sandy Pines contended that for purposes of § 2a of
the GPTA the park models were mobile homes covered

by § 41 of 1959 PA 243 and thus subject to the $3 specific monthly tax imposed on occupied trailer coaches occupying space in trailer coach parks.

The MTT agreed with Sandy Pines. Noting that the statutory language at issue in this case was "very dubious" and "ripe for legislative clarification," the MTT turned to an analysis of the legislative policy reflected by § 2a of the GPTA and § 41 of 1959 PA 243:

> The Tribunal now analyzes the policy which is reflected from the above-cited statutes. The Tribunal recognizes that the exemption sought in this case would only be effective if located in a licensed park. Licensed parks would include mobile home parks, seasonal mobile home parks, and campgrounds, all of which pay an ad valorem tax on the fair market value for their land and improvements, which include roads, utilities, and out-buildings. Any tax or fee collected from residents of the licensed park would then be in addition to those ad valorem taxes already assessed and collected from the owner of the park. Thus, it would be logical and consistent for the legislature to have intended the exemption, i.e., the $3.00 per month fee, to apply to both mobile homes and park models, i.e. trailer coaches, as long as they are located in a licensed park subject to ad valorem tax for the land and improvements thereto.

Sandy Pines being a licensed campground, the MTT ruled that the park models were "exempt from taxation under MCL 211.2a; MSA 7.2(1) for the tax years 1995 and 1996."

Respondents appeal as of right this ruling.

In the absence of fraud, judicial review of a determination by the MTT is limited to determining whether the MTT made an error of law or applied a wrong legal principle. *Michigan Automotive Research Corp v*

*Dep't of Treasury (After Remand)*, 222 Mich App 227, 231; 564 NW2d 503 (1997).

Respondents contend that the MTT incorrectly interpreted § 2a of the GPTA. Respondents contend that § 2a of the GPTA should be construed such that the mobile homes subject to the $3 specific monthly tax in lieu of the property tax are only those mobile homes covered by the provisions of The Mobile Home Commission Act (TMHCA), 1987 PA 96, MCL 125.2301 *et seq.*; MSA 19.855(101) *et seq.*, which continued without interruption the provisions of the Mobile Home Commission Act (MHCA), 1976 PA 419, MCL 125.1101 *et seq.*; MSA 19.855(1) *et seq.* Respondents' rationale for this argument is that 1959 PA 243 was repealed and replaced by the MHCA and the provision of the MHCA were continued in the TMHCA.[3] Respon-

---

[3] 1959 PA 243, MCL 125.1001 *et seq.*; MSA 5.278(31) *et seq.*, was a comprehensive act enacted for the purpose of regulating trailer coach parks. The act originally defined the terms "trailer coach" and "trailer coach park" without reference to mobile homes or mobile home parks and without regard to whether the trailer coaches were used on a continual or temporary basis or recreational or nonrecreational basis. See subsections 2(a) and 2(d) of 1959 PA 243, MCL 125.1002(a) and (d); MSA 5.278(32)(a) and (d). In 1970, the act was amended, in relevant part, to define the term "trailer coach" as including a "mobile home," and to define the terms "trailer coach park" and "mobile home park" synonymously as places harboring trailer coaches on "a continual or nonrecreational basis . . . ." See subsections 2(a) and 2(c) of 1959 PA 243, MCL 125.1002(a) and (c); MSA 5.278(32)(a) and (c), as amended by 1970 PA 172.

In 1976, the Legislature enacted the MHCA. The 1976 MHCA repealed almost all of 1959 PA 243, including the definitions of "trailer coach," "trailer coach park," and "mobile home park." See 1976 PA 419, MCL 125.1146; MSA 19.855(46). The only sections of 1959 PA 243 not repealed by the 1976 MHCA were the section at issue in this case, § 41 of 1959 PA 243, and three other sections devoted to the collection of the $3 specific monthly tax imposed under § 41.

The 1976 MHCA expired on January 10, 1987. See § 47 of 1976 PA 419, MCL 125.1147; MSA 19.855(47), as amended by 1981 PA 168; see also

dents note that the TMHCA does not apply to "camp-grounds,"[4] defined as places "for the establishment of temporary living quarters,"[5] but rather applies to "mobile home parks," defined as tracts of land on which three or more mobile homes "are located on a continual, nonrecreational basis."[6] Respondents contend that Sandy Pines is not a "mobile home park" under the TMHCA because the stipulated facts indicate the Sandy Pines' property is not used on "a continual, nonrecreational basis." Respondents contend that because the park models are not located in a mobile home park as that term is defined in the TMHCA, the park models therefore do not qualify for the $3 specific monthly tax.

As explained in *Rose Hill Center, Inc v Holly Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1997):

Statutory interpretation is a question of law subject to review de novo on appeal. . . . The primary goal of statutory interpretation is to ascertain and give effect to the intent of

OAG, 1987-1988, No 6438, p 80 (May 21, 1987). For the purpose of continuing the MHCA without interruption, the Legislature enacted 1987 PA 96, MCL 125.2301 *et seq.*; MSA 18.855(101) *et seq.* (the 1987 TMHCA). See 1987 PA 96, MCL 125.2349; MSA 19.855(149). Neither the 1976 MHCA nor the 1987 TMHCA continued the use of the term "trailer coach." Rather, both the 1976 MHCA and the 1987 TMHCA have always separately defined the terms "mobile home" and "recreational vehicle." See subsections 2(g) and 2(l) of 1987 PA 96, MCL 125.2302(g) and (l); MSA 19.855(102)(g) and (l); see also subsections 2(f) and 2(k) of 1976 PA 419, MCL 125.1102(f) and (k); MSA 19.855(2)(f) and (k).

[4] See § 8 of 1987 PA 96, MCL 125.2308; MSA 19.855(108); see also § 8 of 1976 PA 419, MCL 125.1108; MSA 19.855(8).

[5] See subsection 2(a) of 1987 PA 96, MCL 125.2302(a); MSA 19.855(102)(a); see also subsection 12501(1)(a) of the Public Health Code, MCL 333.12501(1)(a); MSA 14.15(12501)(1)(a).

[6] See subsection 2(i) of 1987 PA 96, MCL 125.2302(i); MSA 19.855(102)(i); see also subsection 2(h) of 1976 PA 419, MCL 125.1102(h); MSA 19.855(2)(h).

the Legislature in enacting a provision. . . . Statutory language should be construed reasonably, keeping in mind the purpose of the statute. The first criterion in determining intent is the specific language of the statute. If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. . . . However, if reasonable minds can differ regarding the meaning of a statute, judicial construction is appropriate.

In this case, had the Legislature intended the construction of § 2a of the GPTA sought by respondents it could have easily drafted this statute to so provide. However, for purposes of the $3 monthly tax, the specific language of § 2a of the GPTA does not refer to mobile homes "covered by [the TMHCA]," but rather plainly refers to mobile homes "covered by [§ 41 of 1959 PA 243]," which in turn refers only to occupied trailer coaches occupying space in trailer coach parks. The Legislature is presumed to have intended the meaning it plainly expressed. *Institute In Basic Life Principles, Inc v Watersmeet Twp (After Remand)*, 217 Mich App 7, 12; 551 NW2d 199 (1996).

Moreover, fatal to respondents' argument is the fact that at one time subsection 2a(1) of the GPTA did refer to mobile homes covered by the MHCA:

For purposes of section 2, a mobile home which is not covered by Act No. 419 of the Public Acts of 1976, being sections 125.1101 to 125.1147 of the Michigan Compiled Laws,[7] . . . shall be considered real property and shall be assessed as part of the real property upon which the mobile

---

[7] 1976 PA 419 refers to the 1976 MHCA that expired on January 10, 1987, pursuant to 1981 PA 168. See note 3, *supra*.

home is located. [Subsection 2a(1) of 1978 PA 379, MCL 211.2a(1); MSA 7.2(1)(1).]

However, the Legislature rejected this language when it amended § 2a of the GPTA to its current language in 1982. MCL 211.2a(1); MSA 7.2(1)(1), as amended by 1982 PA 539. Changes in statutory language are generally presumed to reflect a change in meaning. *Michigan Automotive, supra* at 232.

Thus, in light of the plain language of § 2a of the GPTA and the Legislature's previous rejection of language that would have permitted the construction of this statute sought by respondents, we reject respondents' argument that the $3 specific monthly tax should be imposed on mobile homes located only in "mobile home parks" operated in accordance with the TMHCA.

Respondents also contend that the $3 specific monthly tax constitutes an exemption to the general property tax. Respondents note that although the MTT found the statutory language at issue in this case "very dubious," it nevertheless construed this language to find that the park models were exempt from the general property tax. Respondents contend that in so doing, the MTT violated the rule of statutory construction that tax exemption statutes are to be strictly construed against the taxpayer.

Assuming the statutory language in this case constitutes a tax "exemption,"[8] we agree with respondents that tax exemptions are to be strictly construed

---

[8] We note that the fundamental issue in this case is the preliminary determination whether the park models should even be considered real property for purposes of the property tax. See MCL 211.2a(1); MSA

against the taxpayer. *Perry Drug Stores, Inc v Dep't of Treasury*, 229 Mich App 453, 461; 582 NW2d 533 (1998). In *Howard v Clinton Charter Twp*, 230 Mich App 692, 696; 584 NW2d 644 (1998), this Court further explained:

> In *Detroit v Detroit Commercial College*, 322 Mich 142, 148-149; 33 NW2d 737 (1948), our Supreme Court quoted the following from 2 Cooley on Taxation (4th ed), § 672, p 1403:

> > "An intention on the part of the legislature to grant an exemption from the taxing power of the State will never be implied from language which will admit of any other reasonable construction. . . . Exemptions are never presumed, the burden is on a claimant to establish clearly his right to exemption, and an alleged grant of exemption will be strictly construed and cannot be made out by inference or implication but must be beyond reasonable doubt. In other words, since taxation is the rule, and exemption the exception, the intention to make an exemption ought to be expressed in clear and unambiguous terms; it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain; and the burden of establishing it is upon him who claims it."

However, the rule requiring strict construction of exemptions does not permit a strained construction adverse to the Legislature's intent. *Rose Hill, supra* at 32-33.

In determining the Legislature's intent in this case, we begin by again considering the specific language

---

7.2(1)(1); cf. *Michigan Bell Telephone Co v Dep't of Treasury*, 229 Mich App 200, 208; 581 NW2d 770 (1998).

of the statutory provisions at issue. *Id.* at 32. Here, the plain language of § 2a of the GPTA provides that mobile homes covered by § 41 of 1959 PA 243 shall not be considered real property for real property taxation purposes. A mobile home is covered by § 41 of 1959 PA 243 if it is an

> occupied trailer coach, . . . including trailer coaches licensed under the provisions of [the MVC], . . . occupying space within the trailer coach park.

The terms "occupied trailer coach" and "trailer coach park" are not defined in § 41 of 1959 PA 243, and the former definitions of these terms in 1959 PA 243 have been repealed.[9] However, we note that the trailer coaches covered by § 41 of 1959 PA 243, include trailer coaches "licensed under the provisions of [the MVC]." We thus examine what constitutes a trailer coach "licensed under the provisions of [the MVC].

The MVC defines a "trailer coach" as "every vehicle primarily designed and used as temporary living quarters for recreational, camping, or travel purposes and drawn by another vehicle." MCL 257.74; MSA 9.1874. Certainly, the park models in this case appear to fit this definition.

Under the MVC, a trailer coach is subject to registration and certificate of title requirements when it is to be moved upon a highway. See MCL 257.216; MSA 9.1916. Moreover, trailer coaches exceeding certain size or weight requirements may not be moved on a highway unless a special permit is obtained. See, gen-

---

[9] See note 3, *supra.*

erally, MCL 257.716 *et seq.*;   MSA 9.2416 *et seq.*
Assuming that satisfaction of these requirements con-
stitutes the licensing necessary under § 41 of 1959 PA
243, we note that the stipulated facts in this case do
not indicate that the park models are titled and regis-
tered as a trailer coach under the MVC, but rather indi-
cate only that the park models are "able to be titled
and registered as a trailer coach" under the MVC. In
addition, the stipulated facts indicate only that the
park models cannot "be licensed by the State of Mich-
igan for over-the-road travel without a special per-
mit." No clue is given concerning whether the park
models at issue presently have such a special permit.
Thus, although it appears that the park models fit the
MVC definition of trailer coach, it is not clear whether
for purposes of § 41 of 1959 PA 243 the park models
are trailer coaches "licensed" under the MVC.

However, we conclude that we need not decide this
issue. Again, we note that § 41 of 1959 PA 243 applies
to

> occupied trailer coach[es], . . . including trailer coaches
> licensed under the provisions of [the MVC], . . . occupying
> space within the trailer coach park.

"When used in the text of a statute, the word
'includes' can be used as a term of enlargement or of
limitation, and the word in and of itself is not deter-
minative of how it is intended to be used." *Frame v
Nehls*, 452 Mich 171, 178-179; 550 NW2d 739 (1996).
In this case, the principal class referred to in § 41 of
1959 PA 243 is trailer coaches, to which is added a
subclass of trailer coaches "licensed under the provi-
sions of [the MVC]." Accordingly, we conclude that as

used in § 41 of 1959 PA 243 the word "including" is used as a term of enlargement. See *Surowitz v Pontiac*, 374 Mich 597, 605-606; 132 NW2d 628 (1965). We conclude that the Legislature intended that the trailer coaches covered by § 41 of 1959 PA 243 may include, but are not limited to, trailer coaches "licensed under the provisions of [the MVC]."

Thus, for purposes of § 41 of 1959 PA 243, we are again left with the undefined terms "occupied trailer coach" and "trailer coach park."[10] However, simply because a phrase is undefined does not render a statute ambiguous. *Marcelle v Taubman*, 224 Mich App 215, 219; 568 NW2d 393 (1997). Rather, undefined words are given meaning as understood in common language, taking into consideration the text and subject matter relative to which they are employed. *Id.* Because the nonlegal words "occupied trailer coach" or "trailer coach park" are not defined for purposes of § 41 of 1959 PA 243, resort to a lay dictionary is appropriate. *Horace v Pontiac*, 456 Mich 744, 756; 575 NW2d 762 (1998); *Marcelle, supra.*

The word "trailer" is defined in relevant part as "a large van or wagon drawn by an automobile, truck, or tractor, used esp. in hauling freight by road" or "a vehicle attached to an automobile and used as a mobile home or place of business, usu. equipped with furniture, kitchen facilities, bathroom, etc." *Random House Webster's College Dictionary* (1992), p 1364. The word "coach" is defined in relevant part as "a

---

[10] In other words, we conclude that in light of our preceding analysis the Legislature did not intend to limit § 41 of 1959 PA 243 to those trailer coaches coming within the definition of "trailer coach" in the MVC.

large, horse-drawn four-wheeled carriage, usu. enclosed." *Random House Webster's College Dictionary* (1992), p 250. Although the word "coach" appears anachronistic[11] in the present context, we must not treat any word in a statute as surplusage or rendered nugatory. *Kiesel Intercounty Drain Drainage Dist v Dep't of Natural Resources*, 227 Mich App 327, 337; 575 NW2d 791 (1998). Rather, we must give meaning to every word of a statute. *Id.*

The definitions of both "trailer" and "coach" indicate that neither has its own power but rather each must be attached to and drawn by some other power source. The definition of "trailer" indicates that it may be used as a mobile home without regard to whether such use is temporary or permanent, recreational or nonrecreational, while the definition of "coach" indicates that is used for carrying people.[12] A "mobile home" is defined as a moveable residence.[13] Applying the meaning as understood in common language, we conclude that the Legislature intended the term "trailer coach" to mean a moveable residence attached to and drawn by some other power source. *Marcelle, supra.* An "occupied[14] trailer coach" would

---

[11] See *Random House Webster's College Dictionary* (1992), p 40, defining "anachronistic" as belonging to an earlier time.

[12] See *Random House Webster's College Dictionary* (1992), p 201, defining "carriage" in relevant part as "a wheeled vehicle for conveying persons, as one drawn by horses and designed for comfort and elegance."

[13] See *Random House Webster's College Dictionary* (1992), pp 622, 1105-1106, defining "home" and "residence."

[14] See *Random House Webster's College Dictionary* (1992), p 904, defining "occupy" in relevant part as "to be a resident or tenant of; dwell in."

therefore be an occupied moveable residence attached to and drawn by some other power source.

The word "park" is defined in relevant part as "a public area of land, usu. in a natural state, having facilities for recreation" or "a space where vehicles, esp. automobiles, may be assembled or stationed." *Random House Webster's College Dictionary* (1992), p 948. Applying the meaning as understood in common language, we conclude that the Legislature intended the term "trailer coach park" to mean an area of land where trailer coaches may be assembled or stationed.

Finally, the MTT concluded that § 41 of 1959 PA 243 applied to parks that are licensed. Again, we note that every word in a statute must be given meaning. *Kiesel, supra.* Here, § 41 of 1959 PA 243 provides that the $3 specific monthly tax imposed on occupied trailer coaches occupying space in trailer coach parks must be collected and remitted by "[e]ach licensee . . . ." In addition, § 41 of 1959 PA 243 provides certain circumstances under which "[t]he licensee of a trailer coach park" need not collect the $3 specific monthly tax. Generally, this Court will defer to the MTT's interpretation of a statute that it is delegated to administer. *Rose Hill, supra.* Accordingly, we conclude that the MTT did not err in construing § 41 of 1959 PA 243 as applying to parks that are licensed.

In summary, we disagree with the MTT that the statutory provisions in this case are of "dubious" meaning. Rather, for purposes of § 2a of the GPTA and § 41 of 1959 PA 243, we conclude that the Legislature clearly and unambiguously intended that the mobile homes subject to the $3 specific monthly tax are

occupied moveable residences attached to and drawn by some other power source that are occupying space in licensed areas of land where such moveable residences may be assembled or stationed.

In this case, the stipulated facts indicate that the park models are moveable, drawn by other vehicles and used as dwellings, albeit temporarily. Strictly applying the plain statutory language to the stipulated facts as a matter of law, we conclude that the park models are occupied trailer coaches. *Howard, supra*; *Marcelle, supra* at 218. The stipulated facts indicate that Sandy Pines is a licensed campground that allows members one campsite on which they may keep recreational vehicles, including park models. Again, strictly applying the plain statutory language to the stipulated facts as a matter of law, we conclude that Sandy Pines is a licensed trailer coach park. *Howard, supra*; *Marcelle, supra*. Because the park models are occupied trailer coaches occupying space in a trailer coach park, they are therefore subject to the $3 specific monthly tax imposed under § 41 of 1959 PA 243 in lieu of the general property tax under § 2a of the GPTA. The MTT reached the right result in this case, albeit pursuant to different reasoning.

We further note that our construction of the statutes at issue in this case is in keeping with the policy behind § 2a of the GPTA. *Kiesel, supra* at 334. Specifically, respondents have supplied this Court with a legislative analysis concerning the Legislature's intent in 1978 when it amended § 2a of the GPTA to provide that the type of mobile homes subject to the $3 specific monthly tax were those mobile homes covered by the MHCA:

THE APPARENT PROBLEM:

The Mobile Home Commission Act regulates mobile homes in mobile home parks, and makes a distinction between mobile homes and such recreational vehicles as campers, tent trailers, etc.[15] The General Property Tax Act exempts from the property tax mobile homes situated in mobile home parks (although it refers to them as "trailer coaches" regulated by a repealed statute),[16] but specifies that all other mobile homes, i.e., those situated on private lots, must be considered real property and therefore assessable. Because its language is outdated and indefinite, the property tax act has caused problems for owners of licensed campgrounds. Some assessors have been adding the value of recreational vehicles (tent campers, motor homes, travel trailers) situated at campgrounds to the total value of those campgrounds, thereby causing campground owners to pay heavy property taxes. *It was the obvious intention of the legislature to permit the property tax to be levied against "permanent" habitations situated on private property,* not against campers which happen to be situated on a private campground on tax day (December 31). Further, some campgrounds rent spaces to owners of recre-

---

[15] See note 3, *supra.*

[16] Before its 1978 amendment, subsection 2a(1) of the GPTA provided as follows:

For all purposes of the preceding section, trailer coaches not under the provisions of Act No. 143 of the Public Acts of 1939, as amended, being sections 125.751 to 125.768, inclusive, of the Compiled Laws of 1948, and while located on land otherwise assessable as real property under this act, when such trailer coaches are used as habitations, and whether or not permanently affixed to the soil, shall be deemed to be real property and shall be assessed as part of the real property upon which they are located. [MCL 211.2a; MSA 7.2, before its amendment by 1978 PA 379 and 1982 PA 539. See 1970 CL 211.2a. ]

1939 PA 143 as amended by 1941 PA 255, MCL 125.751 *et seq.*; MSA 5.278(1) *et seq.*, was a comprehensive act devoted to the regulation of trailer coach parks and was repealed by 1959 PA 243. See § 97 of 1959 PA 243, MCL 125.1097; MSA 5.278.(127); see also note 3, *supra.*

ational vehicles who leave them at the campsites during the week and then drive home, returning to pick them up on the weekends. This service is especially attractive to persons who want to avoid using excessive amounts of gasoline because they had to haul heavy vehicles back and forth. If the law's intention is not made clear, many campgrounds will cease offering these services, and the state will lose a great portion of its tourist business.

THE CONTENT OF THE BILL:

The bill would specify that mobile homes not regulated by the Mobile Home Commission Act are subject to the property tax. It would exempt from the tax a travel trailer or camping trailer licensed as a motor vehicle and parked at a licensed campground for no more than 180 days a year or parked on private property for storage purposes. Truck campers, defined as portable structures designed to be loaded onto or attached to the bed of a truck and used as temporary living quarters for recreation, would also be exempt. The bill would also exempt camping trailers (defined as "vehicular, portable, temporary living quarters used for recreational camping or travel") and travel trailers (portable vehicles mounted on wheels but not requiring special permits when drawn by a car or truck, including those with fifth-wheel hitches) used in temporary recreational camping and traveling.[17] [House Legislative Analysis, HB 4173, October 18, 1978 (emphasis supplied).]

We have already ruled in this opinion that in light of the 1982 amendment of § 2a of the GPTA it is now mobile homes that are not covered by § 41 of 1959 PA 243 that are subject to the property tax.[18] However, what we nevertheless find relevant in the preceding legislative analysis is that the "obvious intention" of § 2a of the GPTA is "to permit the property tax to be

---

[17] See note 2, *supra*.

[18] See 1982 PA 539; see also the previous discussion in this opinion.

levied against 'permanent' habitations situated on private property . . . ." Our construction of § 2a of the GPTA and § 41 of 1959 PA 243 is thus consistent with this policy because the park models are temporary habitations situated not on private property, but in a licensed campground.

Finally, we reject respondents' argument that the MTT's decision should be reversed because the MTT made a finding of fact not supported by competent, material, and substantial evidence. Even assuming that the MTT's passing comment about actual current assessment practices with respect to seasonal living units in campgrounds[19] constituted a finding of fact unsupported by the record, the unsupported finding played no role in the outcome of this case. Rather, the issues in this case were questions of law consisting of the interpretation of statutes and the application of such statutes to undisputed facts. See *Marcelle, supra.*

Affirmed.

---

[19] The MTT noted, in relevant part, that "[a]fter reviewing the file and analyzing the briefs, it appears that many, if not a vast majority of the seasonal living units located in licensed campgrounds and seasonal mobile home parks are currently paying the $3.00 per month fee, thus are considered exempt."