# STATE OF MICHIGAN

# COURT OF APPEALS

BAY VIEW ASSOCIATION,

        Petitioner-Appellant,

v

TOWNSHIP OF BEAR CREEK,

        Respondent-Appellee,

and

DEPARTMENT OF TREASURY,

        Intervening Respondent-Appellee.

UNPUBLISHED
February 5, 2015

No. 317714
Tax Tribunal
LC No. 00-409481

Before: MURPHY, P.J., and METER and SERVITTO, JJ.

PER CURIAM.

Petitioner appeals as of right from the Tax Tribunal's orders granting respondent's motion for summary disposition with respect to petitioner's exemption claims under MCR 2.116(C)(10) and granting summary disposition to respondent with respect to petitioner's taxable value methodology claim under MCR 2.116(I)(2). We affirm.

## I. FACTUAL BACKGROUND

Petitioner is an association affiliated with the United Methodist Church and organized under the Summer Resort and Assembly Associations Act (SRAAA), MCL 455.51 *et seq*. Its property consists of 337 acres of land on which sits 444 summer cottages, two privately owned inns, a privately owned bed and breakfast, and various administrative buildings owned by petitioner. The property also contains wooded area known as the "Bay View Woods." All of the cottages are privately owned by petitioner's lease-holding members. However, petitioner itself owns all the land on which the cottages are situated and merely leases the land to the respective cottage owner. An individual cannot purchase a cottage without first being granted membership status by petitioner. Petitioner restricts membership to practicing Christians and requires prospective members to obtain letters of recommendation from current members and achieve approval by petitioner's Board of Trustees.

-1-

Petitioner engages in a large number of charitable and benevolent acts. These include hosting a Chautauqua program, preserving the Woods in its natural state, allowing the general public to access the Woods, interweaving religious services through its summer programs, allowing local schools and non-profits to use its facilities for reduced or waived fees, and providing vouchers to its programs to local schools and non-profits for use in their fund raisers. Petitioner also puts on many summer events and activities, all of which the general public are invited to attend. Some events are free and others require an admission fee, which in some cases is higher for non-members than it is for members. Petitioner's stated purposes in its Articles of Association are:

> To purchase and improve lands to be occupied for summer homes, for camp meetings, for meetings and assemblies of associations and societies organized for scientific and intellectual culture and for the promotion of religion and morality. The corporation's purpose to erect buildings and make improvements on said lands, to lease portions thereof, to hold camp meetings and moral and religious services thereon for moral and religious purposes, and for scientific and intellectual culture.

Pursuant to section 16 of the Summer Resort Act, MCL 455.66, petitioner has elected to be taxed by respondent as a single tax parcel. Petitioner then apportions the resulting tax bill amongst itself and the various cottage owners as it is allowed to do under section 17 of the Summer Resort Act, MCL 455.67. Respondent determines petitioner's tax bill by determining the taxable value of all its property. Respondent does this in accordance with section 27a of the General Property Tax Act, MCL 211.27a, by taking petitioner's taxable value from the previous year, subtracting any losses, multiplying the result by the lesser of 1.05 or the inflation rate, and then adding the value of any additions.

Because several cottages change hands each tax year, respondent also separately keeps track of the assessed value and taxable value of the individual cottages. Respondent does this because once a cottage is sold or transferred its taxable value must be re-set so that it is equal with its assessed value. Upon a transfer, the taxable value is "uncapped" or reset so that it is equal with the assessed value in accordance with MCL 211.27a(3). Any increases that result from uncapping individual cottages upon transfers are then added to petitioner's total taxable value. Because petitioner has elected to be taxed as a single parcel, respondent does not use the assessed value or taxable value of the individual cottages for determining petitioner's total taxable value. It only uses them to determine the amount to add to petitioner's taxable value as a result of individual cottage uncapping. For reasons explained in the analysis, this has resulted in petitioner having a higher taxable value for its single tax parcel then the sum of its parts would have if they were all taxed as separate parcels.

## II. STANDARD OF REVIEW

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Decisions from the tax tribunal are reviewed for a misapplication of law or adoption of a wrong principle. *Wexford Med Group v City of Cadillac*, 474 Mich 192,

201; 713 NW2d 734 (2006). This Court reviews the tax tribunal's statutory interpretation of a tax statute de novo. *Id.*

## III. ANALYSIS

The first step in interpreting a statute is to "focus on the language of the statute itself." *Peterson v Magna Corp*, 484 Mich 300, 307; 773 NW2d 564 (2009). "The words of a statute provide the most reliable evidence of the Legislature's intent, and as far as possible, effect should be given to every phrase, clause, and word in a statute." *Id.* The language of a statute should be given its clear and ordinary meaning. *Frankenmuth Mut Ins Co v Marlette Homes*, 456 Mich 511, 515; 573 NW2d 611 (1998). If a statutory term is not defined within the statute itself, this Court may consult a dictionary for assistance in interpreting a statutory term. *Houghton Lake Area Tourism & Convention Bureau v Wood*, 255 Mich App 127, 137; 662 NW2d 758 (2003).

Statutes that relate to the same subject or share a common purpose should be read together. *Ryan v Dept of Corr*, 259 Mich App 26, 30; 672 NW2d 535 (2003). "If multiple statutes can be construed in a way that avoids conflict, that construction should control." *Id*. at 30. If two statutes are in conflict the more specific statute controls over the more general one. *Bauer v Dep't of Treasury*, 203 Mich App 97, 100; 512 NW2d 42 (1993).

Generally, "tax laws are to be construed liberally in favor of the taxpayers." *Ford Motor Co v Michigan State Tax Comm*, 400 Mich 499, 506; 255 NW2d 608 (1977). However, tax exemptions are to be construed strictly against the tax payer. *Sandy Pines Wilderness Trans, Inc v Salem Twp*, 232 Mich App 1, 13-14; 591 NW2d 658 (1998). A petitioner seeking an exemption under an already exempt class, such as the charitable exemption, is required to prove by a preponderance of the evidence that it is entitled to the exemption. *ProMed Healthcare v City of Kalamazoo*, 249 Mich App 490, 494-495; 644 NW2d 47 (2002).

### A. PETITIONER'S TAXABLE VALUE METHODOLOGY CLAIM

The Summer Resort Act allows petitioner to have all property held by its lessees taxed to it as a single tax parcel the same as if petitioner itself owned the land. MCL 455.66 provides:

> Whenever the board of trustees of any such association shall serve upon the assessing officer of the township, city or village in which its real estate is situated a notice in writing, signed by its secretary and under its corporate seal, requesting that all of the cottages and buildings owned by its lessees, situate upon the lands of the association, and not exempt from taxation as hereinbefore provided, be assessed to the association as a part of its real estate, *the same as if owned by it*, then and thereafter all such real estate and cottages, and buildings thereon, shall be assessed to such association as real estate and taxes paid thereon, by the association *the same as if in fact the owner thereof, and no lease had been made*. [(emphasis added).]

There is no dispute that petitioner has made this election. Because the Summer Resort Act does not specify the method by which petitioner's property is to be assessed, respondent follows the method provided in the General Property Tax Act which states:

> Except as otherwise provided in subsection (3), for taxes levied in 1995 and for each year after 1995, the taxable value of each parcel of property is the lesser of the following:
>
> > **(a)** The property's taxable value in the immediately preceding year minus any losses, multiplied by the lesser of 1.05 or the inflation rate, plus all additions. For taxes levied in 1995, the property's taxable value in the immediately preceding year is the property's state equalized valuation in 1994.
> >
> > **(b)** The property's current state equalized valuation.
>
> [MCL 211.27a(2).]

Subsection (3) states that "[u]pon a transfer of ownership of property after 1994, the property's taxable value for the calendar year following the year of the transfer is the property's state equalized valuation for the calendar year following the transfer." MCL 211.27a(3). Any subsequent increases in the taxable value of the property are subject to the limitations in subsection (2). MCL 211.27a(4).

Because petitioner elected to have the property owned by its lessees assessed to it the same as if it were in fact the owner, respondent does not use the separately tracked assessed value and taxable value of each individual cottage for anything other than uncapping purposes. Petitioner does not dispute that when a cottage is sold or transferred an uncapping must occur and its tax liability must be adjusted accordingly to account for this uncapping. Respondent employs the method of tracking individual cottage assessed value and taxable value to comply with our directive in *Colonial Square Coop v City of Ann Arbor*, 263 Mich App 208; 687 NW2d 618 (2004). In *Colonial Square*, we determined that a housing cooperative, which is not altogether different from petitioner's summer resort community, could not simply partially uncap its single tax parcel in proportion to the units transferred without accounting for the unique individual value of the unit transferred.[1] *Id.* at 211-212.

Petitioner argues that its taxable value should be determined by adding up the taxable value of all its sub-parts, part of which is the taxable value on each of the individual cottages that respondent tracks merely for uncapping purposes. Petitioner argues that respondent's failure to

---

[1] For example assuming the cooperative contained twenty units and five of them were transferred, the taxing authority could not merely do a proportional uncapping by a ratio of 0.25 without taking into account which five units were transferred. Presumably some units were more desirable than others and, therefore, it was necessary to look at the value of the individual units for uncapping purposes even though the entire cooperative was presumably taxed as one parcel.

do so has resulted in petitioner having a larger taxable value on its single tax parcel then what the sum of the individual parts would have if assessed separately. The reason for this is because large portions of petitioner's single tax parcel have never been uncapped or at least, have not uncapped recently. Therefore, the taxable value on petitioner's single tax parcel remains far below its assessed value, despite the fact that the assessed value has fallen with the declining housing market in recent years. A few of the cottages were recently transferred before property values began to decline. On those cottages, the taxable value would fall if they were assessed separately[2], because the taxable value would be relatively high and close to the assessed value at the time the market began to decline. However, when respondent determines petitioner's taxable value by looking at the previous year's taxable value, losses, inflation rate, and additions, it does not capture these small decreases in the taxable value of individual cottages that would otherwise be captured if the total taxable value was determined by adding up the sum of the taxable value of the individual parts.

Despite the beneficial tax implications to petitioner if its total taxable value was determined by adding up the taxable value of its subparts, petitioner elected under MCL 455.66 to have its lessees' cottages taxed to it the same as if petitioner were in fact the owner of the cottages. The clear and unambiguous meaning of this is that petitioner's taxable value must be determined as if it were one tax parcel. It does not merely mean, as petitioner contends, that it receives one tax bill. All property on the resort, both that owned by petitioner and that owned by its lessees is taxed to petitioner the same as if petitioner were in fact the owner of all the property. The fact that respondent is required to track the individual assessed and taxable value of each individual cottage for uncapping purposes to comply with our directive in *Colonial Square* does not mean that those values can be used to determine petitioner's total taxable value. Petitioner's total taxable value is determined in accordance with MCL 211.27a(2). Respondent has done exactly that, and the tax tribunal did not err in granting summary disposition to respondent on those grounds.

### B. PETITIONER'S CHARITABLE EXEMPTION CLAIM

The Summer Resort Act states that the property of associations formed under it "shall be subject to taxation, except all houses of public worship, and also all school buildings used exclusively for school purposes and the lot upon which they stand, and the furniture therein, which shall be exempt therefrom." MCL 455.64. "Taxation" is defined as "the act of taxing." *Random House Webster's College Dictionary* (1997). Therefore, the clear and unambiguous meaning of MCL 455.64 is that all property of an organization formed under the Summer Resort Act is taxed except for the specifically provided exemptions. This makes MCL 455.64 in conflict with the exemption provisions found in the General Property Tax Act, such as the charitable exemption in MCL 211.7o. Because petitioner is formed under the Summer Resort Act, it is the more specific act and must control. Therefore, petitioner is not entitled to exempt any of its property from taxation, except for the specific exemptions found in MCL 455.64.

---

[2] This is reflected on the individual tracked assessed value and taxable value records that respondent maintains for each cottage solely for uncapping purposes.

Furthermore, even if petitioner was not subject to the above limitation in the Summer Resort Act, it would not be entitled to take advantage of the charitable exemption in MCL 211.7o because petitioner itself is not organized chiefly for charity. Our Supreme Court has clearly stated that the inquiry for determining if an organization is entitled to a charitable exemption under MCL 211.7o must focus on whether the claimant as a whole is charitable "rather than whether the institution offers charity or performs charitable work." *Wexford Med Group*, 474 Mich at 212. The "overall nature" not "specific activities" is what is determinative. *Id.* at 213. "It is not enough . . . that one of the direct or indirect purposes or results is benevolence, charity, education, or the promotion of science." *Id.* at 204. In order to claim the exemption the claimant "must be organized chiefly, if not solely for one or more of these [charitable] objects." *Id.* at 205.

In the present case petitioner does engage in a number of charitable endeavors such as allowing the public to attend its events, hosting a Chautauqua program, preserving the Woods in its natural state, allowing the general public to access the Woods, interweaving religious services through its summer programs, allowing local schools and non-profits to use its facilities for reduced or waived fees, and providing vouchers to its programs to local schools and non-profits for use in their fund raisers. However, a close examination reveals that it also engages in purchasing and improving land for use as summer vacation homes to members of the public who are practicing Christians, who meet petitioner's membership criteria, and have the financial means to purchase a vacation home. While the numerous charitable and benevolent activities petitioner engages in are certainly admirable, it appears petitioner's primary purpose is to provide an exclusive summer vacation community to those who meet its restrictive membership requirements and have the financial means to purchase a summer cottage. Because petitioner is not organized chiefly, if not solely, for charity, it would not be entitled to the charitable exemption in MCL 211.7o even if it were not specifically limited to those exemptions found in the Summer Resort Act. The tax tribunal did not err in granting summary disposition to respondent on petitioner's charitable exemption claims.

## IV. CONCLUSION

Because petitioner elected to have its lessees' property assessed to it the same as if it were in fact the owner, respondent cannot determine petitioner's taxable value by looking at the sum of the taxable value of the parcel's subparts. It must determine petitioner's taxable value by looking at the parcel as a whole in accordance with MCL 211.27a. Respondent committed no error in determining petitioner's taxable value in this manner. The Summer Resort Act limits the property tax exemptions that entities formed under it are entitled to, and petitioner is not organized chiefly, if not solely, for charity. Therefore, petitioner is not entitled to the charitable exemption in MCL 211.7o.

Affirmed.

/s/ William B. Murphy
/s/ Patrick M. Meter
/s/ Deborah A. Servitto